Good morning and may it please the Court. I'm here on behalf of Reuven Appellant Michael Press and 280 proposed intervenors who were former employees and in some cases managers and executives of first Sohio and then BP. My clients were affected by a pension change that BP made after it acquired Sohio in a way that decreased the value of their vested pensions. Indeed, BP received an ombudsman report prepared by a former federal judge that revealed the reductions in participants' pensions and the company's misrepresentations about those reductions, but we're here today not about the merits of the case, but because we are seeking to intervene to assert our own claims in a class action that was certified under Rule 23b-2 without opt-out rights. Now my clients' claims arise from the same transaction as do the class action plaintiffs, but they differ in several important respects. First, we have asserted claims against BP PLC, the parent company, and the class action plaintiffs have not, and the class action plaintiffs have dropped certain claims and theories of recovery that have been asserted by my clients likely in order to achieve certification. And indeed, in Walmart v. Dukes, Justice Scalia specifically warned that plaintiffs in a B-2 class action have a, quote, perverse incentive, unquote, to drop potentially valid claims in order to secure class certification. That's precisely what has happened here. That's why my clients, who want to assert all the claims they've brought, are not adequately represented for the purposes of Rule 24 by class counsel. And that inadequacy matters here because this class has been certified without opt-out rights. That means my clients are forced into a mandatory class. They're forced to give up independent prosecution of their claims. They have to sit back helplessly while lawyers they didn't contract with and class reps have sacrificed some of their claims and are going to litigate those claims without us. Under such circumstances, the only way we can pursue all of our claims is to be allowed to intervene through Rule 24. You might have alluded to this already or you're going to say this, but what are the claims that you say were dropped and were secure certification? Sure. Well, some of them are, we brought a claim for surcharge under ERISA, which the district court, in its opinion, specifically acknowledges the class action plaintiffs forfeited when they achieved representation. Also importantly is the theories of recovery. We have a theory of recovery that we think is very important to us, which is about the opening account balance claims. We allege that when BP switched over this plan, they used an interest rate to set the ASI accounts and they used an interest rate that was too high and that resulted in all of the opening account balances being artificially low. We think that difference in itself could be worth thousands, hundreds of thousands of dollars per claim. And it matters to my clients whether that theory of recovery is asserted. And I think if you look at the briefs in this case, it's very unclear whether that theory of recovery is asserted by the claimants. BP says at pages 17 to 18 of its brief that the class action plaintiffs excluded that from their second amended complaint. So essentially BP contends that claim was voluntarily dismissed. If you go take a look at the class action plaintiffs' appellee brief, they actually contradict BP in two different ways. They say on page 20 that the opening account balance is subsumed into the mathematical calculation. But then a paragraph later they say that actually that claim lies outside the present suit. All those terms, voluntarily dismissed, subsumed, outside, those are all different ways of saying my client's claims may not be fully pursued by the class action plaintiffs in this case. Those contradictions are why we need to be able to intervene to make sure that all of our valuable claims and all of our theories of recovery are asserted on behalf of my clients who desire to do that directly. And I think it's important here to emphasize we're not talking about negative value claims. My clients believe their claims are worth thousands, in some cases hundreds of thousands of dollars. Many of them were very senior executives at BP. I'll give you a couple examples. Plaintiff Linda Adamany worked for 27 years for Sohio and BP. She was the chief executive for a period of time for BP Shipping. She retired as a member of BP PLC's Refining and Marketing Executive Committee, which oversaw a $45 billion portfolio. Plaintiff William Doggett worked for 25 years and he left BP as the Director of Communications and Community Relations for BP America. An actuary reviewed their claims and concluded they could be worth hundreds of thousands of dollars. That's in the record at page 11212. And I give those examples not because the claims of line workers are worth anything or less important than the claims of executives, but just to say these are extremely valuable claims. They're probably the most valuable claims my clients will have in their entire lives and they want to control those claims. They don't want to be bound by what the class action plaintiffs do. So, with all that, I want to turn quickly to the standards under 24A2, which governs this case. And while we have the burden, both appellees have acknowledged this rule should be liberally construed and this court has consistently held that, quote, federal courts should allow intervention where no one would be hurt and greater justice could be obtained. Now there's four elements required for intervention as of right, but there are really only two at issue here. The only one addressed by the district court is the fourth element, adequacy of representation by the existing parties. The appellees in this appeal have raised some issues as to timeliness, and so I'll get to that at the end. But I want to start with the issue that concerned the district court, adequacy of representation. And I want to note that this court has held we don't have to show that representation will be inadequate. We just have to show that it may be inadequate. And this court's analysis earlier this year in the La Union del Pueblo case, it's right on point. That was a case where both the existing defendants and the proposed intervenors sought the same result to uphold changes in the election laws, but the court held that where the intervenors had a different strategy to get to that same end, that different strategy was enough of a distinction to suggest that the representation, quote, might be inadequate, which is all 24A2 requires. Here we have much more than just a different strategy. We're seeking entirely different claims and theories of recovery than the class plaintiffs. And so to bring it back to what Justice Scalia said in that Walmart v. Dukes case, class action attorneys face perverse incentives to place at risk potentially valid claims for monetary relief. In Walmart, Justice Scalia noted that the class representatives were only pursuing back pay. They weren't pursuing compensatory damages because of concerns they wouldn't be able to certify the class under B2 if they pursued every available remedy. That very risk has happened here. We brought claims for opening account balances, surcharge, equitable estoppel, and unjust enrichment, and the class action plaintiffs haven't pursued those claims, probably because it would make certification more difficult. This court, long before Walmart, noted these exact problems in the Woolen v. Sertran taxicabs case. We noted, this court noted there that, quote, the problem of intervention within a class action would appear to arise most likely in a class certified under B2 because an intervening plaintiff is unable to opt out of the class. And what we expressed there is this court is concerned that class counsel will be trying to maximize recovery for absent class members by asserting only claims that can survive the requirements of 23A and 23B2. My clients don't have to worry about commonality or typicality. They just want to assert all of their claims for their own theories of recovery. They don't want to be limited to those claims that can survive class certification. And this case is a pretty clear example of why class counsel, they might be doing an adequate job of representing absent class members, but they don't fully represent the interests of my clients, which is why we should be allowed to intervene under Rule 24. I think if you go back and look at the adversary committee notes, it was cited extensively in Woolen in footnote 8. The adversary committee noted when it changed Rule 24 and liberalized it back in 1966, that if adequacy of representation is not the same consideration under 23 and 24, class counsel might be able to adequately represent absent class members while not foreclosing intervention under Rule 24. And in fact, the adversary committee went on to say that in the usual case, if the absent class members can indicate that they are not being adequately represented, they should be allowed to intervene in the class action, which is all we're asking to do here. Also help me out here on where we are in the record here. The class has been certified, obviously it's brought here on the motion to intervene. Assuming that the class is certified and the case goes forward, isn't there an opportunity down the road for an opt-out or why is that foreclosed as we hear this case today? I think there's . . . well, there won't be an opportunity to opt-out as the class is currently certified, because it was certified under B-2 without opt-out. And that issue was litigated and there was a 23-F appeal taken and it was rejected. And we're not here today to challenge class certification or to suggest that opt-out should be required, although I will note that this court has allowed opt-out in 23-B-2 classes in the past. But the only issue, I mean, as the class is currently certified, it is a B-2 class, the 23-F appeal is over, and it is proceeding forward towards a trial without us having any opportunity to opt-out. It might be that one day we would have the opportunity to object to a settlement or to collaterally attack the decision after the settlement was made, but I think that's what the Adversary Committee noted, that's what Woolen noted. We shouldn't be limited to challenging, on a very limited record, a settlement later or, you know, collaterally attacking a decision later. We should have our own opportunity to be heard before the decision . . . before the court makes decisions. You know, this court recognized that in the Brumfield case. You know, the very purpose of intervention is to allow interested parties to air their views so that the court can consider them before making potentially adverse decisions. That's what we want. We don't want to only be heard after the fact, trying to challenge decisions made on our own claims. So the final issue that was raised by the appellees here is timeliness. That turns to this court's analysis under Stallworth, and the first step is to determine when the clock starts running. And in Rotstein, that was the Stanford case, I think this court was pretty clear, the starting point for timeliness in a class action context is when the applicant became aware that its interest would no longer be protected by the existing parties. And the Rotstein court went on to say that normally interveners should file, quote, if and when class certification is denied or some other event suggests the movement's interests are no longer protected. Here that event was when the magistrate recommended certification without opt-out rights. And you could see that if we just briefly talk about the procedural history. We filed our claim in Ohio. We were transferred down to Houston, and at the time we were transferred, we argued against transfer saying that they are moving for a class under B2 or B3. We may very well have the right to opt-out and assert our own claims. And when they argued class certification, that transcript is in the record, they not only argued under B3, they argued and specifically cited monumental life, which is the decision where this court said if you have a B2 class seeking monetary relief, you have to have notice and opt-out. So for that whole period, we thought we'd have the opportunity to opt-out. It was only when the decision from the magistrate came down saying we're going to certify a we had to step up and intervene, and we did it within two weeks of that decision. The reason that's the right time to intervene is pretty straightforward. You don't want an absent class member to be required to intervene in any case the moment a class action is filed to protect their opt-out rights. If you require that, it's going to make for much less orderly litigation. You want absent class members are entitled to wait on the sidelines and see what happens until either the class is denied or they realize their rights are going to be affected. And we did that. And when we realized we wouldn't be able to opt-out, that's when we intervened. That's the right time. Now, both BP and the class action plaintiffs argued that the court should start the clock from when that original class action lawsuit was filed or when we became aware of it. This court specifically rejected that time in the Stallworth decision. This court said, quote, the time that the would-be intervener first became aware of is not relevant to the issue of whether his application was timely. That's been the law in this circuit since 1977. Final point on timeliness. One of the issues under Stallworth is prejudice, but it's the prejudice caused by the delay. It's not the prejudice caused by the intervention. This court made that point in Sierra Club v. Espy. BP and the class plaintiffs assert all kinds of ways in which they'll be prejudiced by waiting two weeks to seek to intervene after the magistrate's decision. And indeed, on page 30 of its brief, BP kind of gives up the game on this point. They say, quote, there never would have been a convenient moment for the press plaintiffs to be added as parties to the Gunther class action. That's true in every intervention. The parties to the case would always rather litigate among themselves than deal with a new party that has its own additional interests. But that's not the kind of prejudice that the Stallworth factors are concerned with. Here, the district court didn't find that we were untimely, because there's really no basis to find that we were untimely. As soon as we realized we lost the right to opt out, we intervened, and that was the appropriate time to do so. So unless there are questions, I'll preserve the remainder of my time for a moment. Thank you, counsel. Let's see. Mr. Morrison? Morning. Good morning, and may it please the court. I represent the defendants in the litigation below. This is a case, as counsel noted, in which 280 press plaintiffs seek to intervene in a certified class action. The record is that the certified class action has approximately 7,000 potential members. Intervention would delay and prejudice the litigation, prejudice the parties, particularly the existing class members who have waited a very long time to have their case decided, as well as the defendants who have waited a very long time, this case has now been going on six years, to have the matter decided. Intervention inevitably is going to cause additional disruption, repetition, et cetera. There's no question here that the parties, the two sets of plaintiffs, have the same objective. Both Press and Gunther set out in the introductory paragraphs of their respective complaints that what they're seeking to do is the same. They're seeking to hold BP liable and hold BP to promises they say BP made in 1989. And the effect of that, according to both of them, is the same thing, to get more pension benefits. And while this case has got trappings of breach of fiduciary duty and there's discussion of equitable remedies, the bottom line is the remedy they want is exactly the same. They want the bigger of the benefit under the old pension formula and the new pension formula. I'd like to focus on three particular issues in my time today. First, in order to satisfy the requirements of 24A2, the Press plaintiffs have to show that they are not adequately represented by the Gunther class representatives. First of all, important to keep in mind that they admit in their briefing and admitted below that they're part of the Gunther class. The only substantive claim asserted by either set of defendants is the same claim, that there were misrepresentations in 1989 about the pension plan, and the only remedy that's sought by both is the same thing, more benefits. And so both the Gunther class is already and has been for the last six years vigorously pursuing that claim and trying to get it to a judgment. The intervention here is untimely. While the intervention, first papers discussing intervention were filed a couple of weeks after the class certification decision came down, at that point actually the Press plaintiffs were not seeking to intervene. They were seeking to exit the case. They wanted to intervene solely for the purpose of objecting and trying to get opt-out rights. That's not intervention. Go back to when they filed their lawsuit and they admitted in their papers in the district court that when they filed their lawsuit six months prior to that in Ohio, they had already formed serious concerns that the Gunther case was not proceeding at an appropriate pace, that they were not adequately preserving their claims, and that's why they filed the lawsuit in the first place. So the very latest point where they realized they should have taken action was when they filed their lawsuit in Ohio. And certainly the point where they made that realization was earlier. And intervention, the delay of intervention will cause prejudice. If you look at the six months between when they filed suit in Ohio and they eventually said the word intervention in court papers in Texas, there's something like 70 docket entries covering full briefing of the class certification motion, a number of steps taken by the district court to advance the case towards trial, completion of certain discovery, briefing of summary judgment motions. All of that would need to be redone if Press and the 279-odd others are allowed into the case. And finally, this is fundamentally not a Rule 24 situation. The plaintiffs are seeking essentially the same thing. They want the benefit that the class action will deliver to them. They do the math and come up with higher numbers, they think, than the Gunther plaintiffs have come up with, but they're seeking the same thing. They also initially didn't seek to intervene to get into the case. Now we're hearing that they want to get into the case to prosecute their claims, but they've been very cagey about what that means in their court papers. Initially saying they don't want to relitigate anything, and now in the conclusion to their reply brief to this Court, they say very clearly what they want to do. They complain that they have not been allowed to participate in discovery, which you can read to say they would like to redo the discovery that's been done, which is an instance of prejudice. They say they've not been allowed to participate in dispositive motions. Again, they want to redo those. That is prejudice, and it's prejudiced occasion by their delay because their arguments and positions could have been taken into account by the district court in real time had they acted sooner. So turning to the issue of adequate representation, you heard about a couple of points from counsel for press. First, well, the first one I'd like to talk about is the opening account balance claim. And in their papers, they really identified three things that they thought were different between their complaint and Gunther's complaint. The opening account balance claim is something that's brought up by both sets of plaintiffs and essentially, as counsel said, concerns the interest rate that BP used to calculate a lump sum value of the prior plan benefit up through 1231-88 that was then used as the basis for the calculation of the new formula. Neither set of plaintiffs is pursuing a separate legal claim on this. The way that both sets of plaintiffs are using it is to argue that it's just another misrepresentation by BP in 1989 that the new plan would be better than the old plan. And they point to this and say, well, BP represented that the full value of your benefit under the old plan was rolled into the new plan, but that wasn't true because you used an inflated interest rate that reduced the lump sum value. And in fact, if you look at paragraph 395 of the press complaint that was filed in Ohio, they describe their claim, their substantive legal claim about the opening account balance issue as being one of misrepresentation. And they say, quote, BP misrepresented, item four. The WRAP opening account balances were equal to or greater than the benefits earned as of the conversion. That's the opening account balance claim. They're not bringing a separate legal claim. There was, as we noted in our brief, a prior lawsuit called French in which somebody did bring a separate legal claim saying that BP had violated substantive provisions of ERISA by doing this calculation the way that it did. That claim was rejected. The Gunther plaintiffs initially brought that separate legal claim and as press has conceded, dropped it. But there's still a discussion by the Gunther plaintiffs of opening account balances and associated misrepresentations in their presentation of the case. And they also would note that it's baked into the difference between the old formula and the new formula. If the opening account balance wasn't enough, it's not going to replace the old formula benefit and therefore the delta between the two will be bigger. The claim that the press plaintiffs focused on in their briefing but sort of elided today is their claim against BP PLC, which is the British parent of the BP entity that's sued here. That claim is wholly derivative. So there's no allegation, no suggestion that it would generate any additional recovery for the class. And because the remedy here is a bigger benefit, if you sort of drill down into what these ERISA remedies amount to, they're saying give us the bigger benefit that you supposedly promised in 1989. That's going to come out of the pension plan, which is a defendant in the Gunther case. And if the plan is ordered to be reformed by the court, that plan will pay benefits according to the reformation order and BP PLC will have nothing to contribute to that. And the ERISA remedy structure is quite clear that you don't get to get extra remedies or double remedies. You just get essentially make whole relief based on the harm that's been done and that here is the additional benefit. And then finally, there's discussion of the ombudsman process. And just to explain briefly what that is for the benefit of the court, the ombudsman program was a program that BP had where employees could raise concerns that they had, principally things dealing with safety, and those would be investigated and then the ombudsman would try and resolve the concern asked between the company and the employees. In 2011 to 14, there were several hundred employees who raised concerns about pension treatment. Essentially, they said BP was treating other groups of employees better than the SoHo employees. And the ombudsman investigated that, ultimately recommended that BP do something for these employees. BP declined to amend its plan to do anything for them. And the plaintiffs in both cases, again, are doing the same thing with that. Both of them say that because BP went through this or allowed this process to happen with the ombudsman, it hid the issue from them, allowing them to file their suit later. And neither one of them is saying there's a separate legal claim based on the ombudsman process. There wouldn't be. The ombudsman's not a fiduciary. It's not a fiduciary process under ERISA. They're simply using it to justify some of the lateness of their claims. So that's not a material difference between the cases. And in fact, you can look at the Gunther claim on this issue in their second amended complaint, which is at ROA 1902 to 1908, paragraphs 48 to 78, outlines their position on the ombudsman issue. On timeliness, the first thing the court has to do, as counsel noted, is decide what's the trigger point. Clearly, as I explained before, it's not the denial of class certification. This isn't a situation like in, you know, some of the prior cases of this court where the decision not to certify, so Rothstein, for example, where the denial of certification is an indication that there will no longer be a party in the case pursuing the claim. Here it's clear that the press plaintiffs knew by September 14, 2020, when they filed a suit, that they weren't being adequately represented, because why else would they have filed their lawsuit? And certainly, they learned that at some point between April of 2016, when Gunther filed his suit, and September of 2020, when they filed their own. In fact, they noted at ROA 111, 86 and 87 in their motion to intervene, they describe the process they went through to determine whether to file a lawsuit, and they have conceded again at ROA 14, 648, in opposition to BP's motion to stay in the district court, that one of the reasons they filed a suit was because Gunther wasn't getting resolved fast enough. Even if we look at the time between September 2020, when they filed suit, and when they eventually said intervention, shortly after the class certification decision, as I noted, there are nearly 70 docket entries worth of litigation activity. The Gunther plaintiffs had just filed their class certification motion. We filed our response shortly after there was a reply, then there was argument on that. The press plaintiffs tended the argument silently. That would have been a good time to raise these issues and have the court address them without forcing the parties to potentially repeat them. January 2021, we filed summary judgment. Again, there are a number of issues that would have to essentially be rehashed if we have to go back and do this again with 280 plaintiffs, and there's certain to be delay. Adding 280 individuals into the case is going to require their depositions. They may have depositions they would like to take. This case has been going on for six years. I'm aware of one witness who's already died. There are 7,000 potential class members. I don't even know how many of them are still alive, and I assume by the time we're done dealing with the addition of 280 people, many of them will have passed away. That's clearly prejudice resulting from the delay, and we think that provides ample reason to find the petition was untimely. And finally, I would just like to flag the shifting explanations for what the press plaintiffs want to do, which I think takes this case out of Rule 24 and makes this much more of a Rule 23 issue about who should be class counsel. First of all, they sought to opt out, not to intervene. Then, when they tried to intervene, they initially said, well, we don't want to redo anything. We're not going to disturb what's happened. Then, in response to our brief in which we said they've never explained what they want to do, how they would be in this case, they've now finally come clean and admitted in their reply that they would like to redo large parts of the case because they disagree with the strategy and tactics of the Gunther plaintiffs. Now, some of that may be due to the flawed class decision that the district court entered, which we, as counsel noted, we appealed, and that petition was denied, and that's not before the court today. But the fact is, on this record, the only thing that's going to happen if the press plaintiffs are allowed into the case is delay, confusion, and disruption, and the district court was well within its authority to deny their intervention. And for those reasons, we would ask the court to affirm. Thank you, counsel. Ms. Weeks? Good morning. May it please the court, Susan Weeks on behalf of plaintiffs Gunther, Fujimoto, and Owen. I find myself in the uncomfortable position of sitting with BP on this case and joining in Mr. Morrison's arguments other than his comment about the class certification. I think fundamentally one of the key things the court needs to look at today is what is the class definition? Our plaintiffs seek to recover through reformation of an ERISA plan the benefit promised to them, and the promise occurred upon a conversion of a final average pay traditional pension plan to a cash balance plan. And the promise made was that your benefit, when you draw it, will be equal to or better under the new plan than it was under the old plan. You've heard that we seek things different than the press group. That's not necessarily true. We may have a different path to the same route. We both seek reformation of that plan to address that pension deficiency. Counsel brought up on behalf of Mr. Press that we have made contradictory statements. We have not. And I'm sorry to oversimplify this, but that's my easiest way of approaching when is it subsumed in our class action and when is it outside of our class action? Because the main way they say that the press group diverges from the plaintiffs in our class action is in the opening balance promise. The opening balance promise that the press group brings before this court is the opening balance that we credit to your hypothetical account will be what you would have received under the old plan. And their complaint is we did not receive that because the discount rate was too great and when you reduced it back to the present value, we were lost. And here's those numbers. And I'm out of time. Oh, you can complete your thought. Thank you. So here's those numbers. So if you're subsumed, assume that under the average pay plan, the final average pay plan, you would have received $150,000 at retirement. Your opening balance was $10,000. You got $80,000 in pay and interest credits. At retirement or at separation, you got $90,000. You're $60,000 short. If they're correct and your opening balance should have been $20,000, at retirement, you get $80,000. You're $100,000 short, so your short falls only $50,000. We recover either of those under our class action. That's why it's subsumed. Where it falls outside of that is if you have $10,000 and an opening balance and you get $30,000 in pay credits, and so your final benefit's $40,000, and under the final average pay plan, you would have only had $35,000. You did as well or better, but if your opening credit should have been $20,000 instead of $10,000, you're $10,000 short. That's outside of our class, and that's where they diverge. And on that basis, I would ask that the court deny the intervention because they do not proceed in a manner germane under that claim. Thank you, counsel. Thank you. Mr. Burge, rebuttal. Thank you, Your Honor. I want to start with where BP started its argument about this question about the presumption of adequacy. I think if this court goes back to look at the Brumfield case, if you even just look at the case that the Supreme Court entered a few months ago that we submitted a 28J letter on, the court has clearly held there's no presumption of adequate representation unless the interests align, quote, precisely. If you look at the Brumfield case, that was a case where both the state and the parents sought to intervene to protect a school voucher program, but the parents just wanted to retain their vouchers and the state had other interests. And the court said that's not precise alignment. Here, if you look at this ultimate objection argument from BP, they're just saying we have the same ultimate objection because, quote, we're seeking equitable relief under ERISA based on alleged fiduciary breaches in connection with the 1989 plan amendment. That is defining the same ultimate objection. At such a level of abstraction, it would cover everything. It collapses the presumption question into the second element of the 24A test. Do we have an interest in the same transaction? It's got to be this precise alignment of our interests. And here, I think if you just listen to the argument, BP itself conceded we have higher numbers than the Gunther plaintiffs do. If you look at the claims we're bringing, if you go back to the district court's decision, it said expressly that the presumption here, the presumption can't be overcome by arguing that the Gunther plaintiffs should have sought to have their class certified under B3 rather than B2 to avoid possibly forfeiting a surcharge remedy. I mean, the district court himself recognized they were forfeiting a remedy that we are still proceeding with. That's not the kind of precise alignment that gets you into this presumption of adequacy. That's the opposite of that. That's evidence that their representation is not adequate within the minimal standard of 24A2. There's a question about sort of our original intervention and how initially we only intervened to protect our right to opt out. And if you look at the procedural history on that, at the time there was a 23F appeal in which BP opposed certification. We joined that appeal because we sought to have this court reverse the district court at least to the limited issue of allowing us to opt out. That was ineffective. Once it was clear we were not going to get the right to opt out, we made it clear we wanted to fully intervene. This court in a number of cases, including the SEC funding resource group, has noted it always has a very lenient standard on motions to intervene. Neither the district court nor the appellees here are confused about what we want to do. We filed an entire complaint. Everybody knows the claims we want to assert in this case. And I don't want to be cagey about what our goal here is. We want the legal rights associated with formal intervention. If you look at the Espy case, we want to participate in the briefing of issues, the presentation of evidence, and the ability to appeal. If you look at the Edwards case, we want, quote, the benefit of discovery. We want, quote, to participate in this proceeding with the rights and privileges of full parties and the opportunity to adequately prepare for trials and hearings. We understand we're not going to retake any discovery that's already been taken, but there may be some limited additional discovery that needs to be taken. And we will do that as expeditiously as possible. The trial court has a lot of discretion in terms of how it wants to organize this thing. It can limit the party's discovery. It can sever the cases if it feels it necessary. It's got lots of options. But under 24A, we're entitled to intervene, we believe. And once we intervene, we're entitled to participate like any other plaintiff would participate. Mr. Burch, let me ask you this. Mr. Morrison represented to the court that the claims, your client's claims against BP-PLC are wholly derivative of claims against the other defendants. Do you agree with that? I don't agree with that. We have a claim against BP-PLC based on aiding and abetting breaches of fiduciary duty. I think that is a separate claim from the claim for under ERISA, and nobody's brought any claim against us on that. I think the remedies we're seeking for BP-PLC are unjust enrichment and restitution because if you read our complaint, what we're alleging basically is BP-PLC had an incentive to reduce these people's pensions so that we contribute less money to the plan. So BP-PLC has benefited from the reduction in these plaintiffs' pensions, and we believe that states a claim against BP-PLC. The merits of that claim aren't before this court right now. I'm sure BP will file motions to challenge that, and we will at the appropriate time brief that, but I don't think it's entirely subsumed in our claim against BP-America. Thank you. And I guess a final, well, I'm just about out of time. I would say I believe we've met the standard for intervention. I believe we've shown that we do not, the interests do not align precisely, and we are not adequately represented. I'd ask the court to reverse the district court and allow us to intervene. Thank you, counsel. Thank you for a well-ordered case.